# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

FOUNDATION TITLE & ESCROW
COMPANY, LLC

VERSUS

REGIONS BANK

CIVIL ACTION

NO. 24-00005-BAJ-SDJ

## RULING AND ORDER

In this action, Plaintiff seeks to recover approximately $200,000 from Defendant for its alleged mishandling of a fraudulent check. Now before the Court is Defendant's **12(b)(6) Motion To Dismiss (Doc. 8, the "Motion")**. The Motion is opposed. (Doc. 11). For reasons provided herein, Defendant's Motion will be granted, and Plaintiff's claims will be dismissed with prejudice.

## I.    BACKGROUND

The facts of this matter are essentially undisputed. Plaintiff Foundation Title & Escrow Company, LLC held an account with Defendant Regions Bank. (Doc. 1-1 at p. 2). The account was governed by a Deposit Agreement. (*Id.* at p. 5). The Deposit Agreement obligates Defendant to a duty of ordinary care when receiving an item for deposit or collection. (*Id.* at p. 24). The Deposit Agreement also provides that:

> in the event another financial institution notifies [Defendant] of or makes a claim with respect to an Item Irregularity or otherwise indicates that an item you have deposited will not be paid due to any Item Irregularity, we shall have an immediate claim against you and a right (without limitation or preclusion of any other rights or remedies available to us) to place a hold on or charge your account for the amount of any item in question without notice to you.

(Doc. 8-2 at p. 13).[1] Plaintiff agreed in the Deposit Agreement that Defendant could "release or remit such amount as [Defendant] deem[s] appropriate or as required by law for the resolution of the Item Irregularity without notice to you." (*Id.*). The Deposit Agreement is governed by Louisiana law. (*See* Docs. 1-1 at p. 2, 8-2 at p. 36). Plaintiff regularly used its account with Defendant to store and transfer client funds. (Doc. 1-1 at p. 2).

On November 15, 2022, Plaintiff was retained to handle the purchase of surgical equipment by "Nathan Harris" of "Greenfield Commercial Loans." (*Id.*). Nathan Harris and Greenfield Commercial Loans appear to be fictitious entities. (*See id.*). An officer of Plaintiff, Dwight Poirrier, attempted to enter into an attorney-client relationship with Harris. (*Id.* at pp. 13-14). The purpose of this relationship was to represent Harris in the contemplated purchase of surgical equipment. (*Id.*).

In connection with this purchase, on November 29, 2022, Plaintiff received a cashier's check from Phillip Paulson in the amount of $196,000. (*Id.* at p. 3). It is not clear from the Complaint what the nature of Paulson's relationship with Harris was. However, both sides agree that the check furnished in his name was counterfeit. (Docs. 1-1 at p. 4, 8-1 at p. 2).

Upon receipt of Paulson's check, Plaintiff deposited the sums into its account with Defendant. (Doc. 1-1 at p. 3). From November 29 through the morning of December 1, 2022, Plaintiff's online account with Defendant showed that the check funds had cleared and were available for transfer. (*Id.*). Upon directions from Harris,

---

[1] Plaintiff contests the introduction of the entire Deposit Agreement. This contention is without merit, as discussed below.

Plaintiff transferred $143,000 of those funds to an account with Deutsche Bank Trust Company ("Deutsche Bank") on December 1, 2022. (*Id.*).

The next day, Plaintiff accessed its online account with Defendant and saw that Paulson's check had been dishonored as counterfeit. (*Id.* at p. 4). Additionally, Plaintiff discovered that Defendant had debited its account for the dishonored check sum. (*Id.*). Plaintiff alleges that the information posted to its online account was the only notice it ever received regarding the dishonoring of the check. (*Id.*). Plaintiff requested that the wire to Deutsche Bank be recalled or retrieved. (*Id.*). Fifteen days later, Defendant notified Plaintiff that the wire could not be recalled, as the princely sums had been routed to Nigeria. (*Id.*).

On December 1, 2023, Plaintiff filed suit in Louisiana state court, alleging that Defendant breached its contractual and statutory duties of ordinary care in its handling of the counterfeit check. (*Id.* at pp. 4-7).

Defendant removed Plaintiff's action to this Court on January 5, 2024, on the basis of diversity jurisdiction. (Doc. 1 at p. 3). Defendant filed the Motion presently before the Court one month later. (Doc. 8). Defendant's Motion is opposed. (Doc. 11).

## II.    STATEMENT OF LAW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted). Conclusory allegations or legal conclusions are insufficient defenses to a well-pled motion to dismiss. *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017).

When determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, a court's inquiry is limited to "(1) the facts set forth in the complaint, (2) documents attached to or incorporated by reference in the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Spears v. Nanaki, L.L.C.*, No. 22-30460, 2023 WL 2493741, at *1 (5th Cir. Mar. 14, 2023). Moreover, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Here, the Deposit Agreement was referred to and attached in part to Plaintiff's Complaint, and is central to its claims. (*See* Doc. 1-1). The Court will therefore consider the complete copy of the Deposit Agreement attached to Defendant's Motion to Dismiss, (Doc. 8-2), in its Rule 12(b)(6) inquiry.

4

## III.    ANALYSIS

### A.    Breach of Duty of Ordinary Care

At its core, Plaintiff's Complaint alleges that Defendant owed contractual and statutory duties of ordinary care in receiving and managing items for deposit or collection, that Defendant breached these duties, and that Plaintiff suffered as a result. (Doc. 1-1 at p. 5).

As an initial matter, the Court agrees with Defendant that the Deposit Agreement controls in this matter. Plaintiff has not alleged that the Deposit Agreement was unlawfully established or contains unlawful provisions, and so "it is the law between the parties." *Groue v. Cap. One*, 2010-0476 (La. App. 1 Cir. 9/10/10), 47 So. 3d 1038, 1041.

The Deposit Agreement does not define ordinary care. (*See* Doc. 8-2). It does, however, contain a provision that appears to squarely cover, and preclude, Plaintiff's claims. As stated above, the Deposit Agreement contains a provision effectively stating that upon notice from another financial institution that a check is counterfeit, Defendant may debit Plaintiff's account by the check sum without notice. (*Id.* at p. 9). Defendant argues that this is precisely what happened here, and that Defendant debited the check sum after being notified by another financial institution, The Toronto-Dominion Bank, that the check was counterfeit on December 2, 2022. (Doc. 8-1 at p. 5). The Court has no reason to dispute the veracity of Defendant's account, and this sequence of events appears to be in harmony with the factual allegations located in Plaintiff's Complaint. (*See* Doc. 1-1). However, the Court may not rely on factual assertions located in Defendant's Motion to Dismiss when assessing Plaintiff's

Complaint for sufficiency under Rule 12(b)(6). *See Toth Enterprises II, P.A. v. Forage*, 707 F. Supp. 3d 697, 704 (W.D. Tex. 2023) (courts "may not consider new factual allegations outside the complaint.").[2] Were Defendant's same argument to be brought with evidentiary support on a motion for summary judgment, it is entirely possible that some or all of Plaintiff's claims would be subject to dismissal. Nevertheless, Plaintiff's Complaint suffers from other infirmities, outlined below, that prove decisive.

While the Deposit Agreement does not define ordinary care, Louisiana law does, and the Deposit Agreement expressly provides that Louisiana law governs its terms. (*See* Docs. 1-1 at p. 2, 8-2 at p. 35). La. Stat. Ann. § 10:3-103 defines ordinary care as, "in the case of a person engaged in business," "observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged." Louisiana law also places a duty of ordinary care on collecting banks when sending notice of dishonor or nonpayment of an item "after learning that the item has not been paid or accepted." La. Stat. Ann. § 10:4-202(a)(2). A bank is a collecting bank when it handles an item for collection. La. Stat. Ann. § 10:4-105. Defendant was a collecting bank for purposes of the counterfeit check. (*See* Doc. 8-2 at p. 13). A collecting bank discharges its duty of ordinary care by "taking proper action before its midnight deadline following receipt of an item, notice, or settlement." La. Stat. Ann. § 10:4-202(b). The midnight deadline is defined in La. Stat. Ann. § 10:4-104(10) as midnight on the "next banking

---

[2] For this same reason, the Court will not consider the additional factual allegations made in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss. (Doc. 11).

day following the banking day on which [the bank] receives the relevant item or notice or from which the time for taking action commences to run, whichever is later."

What's more, La. Stat. Ann. § 10:4-214 provides that a bank that has "made provisional settlement with its customer for an item and fails by reason of dishonor. . . may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer." In order to do so, a requesting bank needs to request this refund or provide notice to the customer "by its midnight deadline or within a longer reasonable time *after it learns the facts*." La. Stat. Ann. § 10:4-214 (emphasis added). The Deposit Agreement states that all deposited items are provisionally credited subject to final payment. (Doc. 8-2 at p. 14).

In sum, Louisiana law provides that a collecting bank satisfies its duty of ordinary care to a customer that has deposited a fraudulent check by providing notice to the customer of the related dishonor within one business day, or within a longer period of time so long as the period is reasonable, *after* the bank learns that the check is fraudulent. *See* La. Stat. Ann. §§ 10:3-103, 10:4-104(10), 10:4-202(a)(2)-(b). Within this same period of time, a bank may charge the customer any credit given for the dishonored item. La. Stat. Ann. § 10:4-214.

The Court finds that the Louisiana law described above, incorporated into the Deposit Agreement by its choice of law provision, covers and precludes Plaintiff's claims regarding Defendant's duties of ordinary care. Plaintiff has failed to make any factual allegations that Defendant exceeded the deadlines provided by Louisiana law when it posted notice to Plaintiff's account of the dishonored check on December 2, 2022. (*See* Doc. 1-1 at p. 4). Plaintiff's only allegation to this point was that Defendant

had "purported knowledge or suspicion of the fraudulent and/or fictitious nature of the cashier's check," which would trigger the start of the midnight deadline to take corrective action, but Plaintiff does not allege that this knowledge or suspicion developed so far prior to the dishonoring of the check that the midnight deadline had elapsed. (*Id.*).

Plaintiff further complains that, despite the December 2, 2022, notification posted to its account that the Paulson check was dishonored, Defendant did not satisfy its statutory duties to provide notice. (*Id.*). Plaintiff does not provide any cogent argument in support of its position on this issue, and no case law. To the contrary, La. Stat. Ann. § 10:3-503 states that "[n]otice of dishonor may be given by any person; may be given by any commercially reasonable means, including an oral, written, *or electronic communication*; and is sufficient if it reasonably identifies the instrument and indicates that the instrument has been dishonored." Plaintiff's own Complaint alleges that on December 2, 2022, an "indication" existed within Plaintiff's online account with Defendant that identified the counterfeit check and stated that the check had been dishonored. (Doc. 1-1 at p. 4). This indication was evidently sufficient for Plaintiff to identify the instrument at issue and to determine that the instrument had been dishonored, since Plaintiff contacted Defendant that same day to report fraud and request the recall of the related $143,000 wire transfer to Deutsche Bank. (*Id.*).

Therefore, based on the above, the Court likewise finds that Plaintiff fails to make the factual allegations necessary to allow the Court to draw a reasonable

inference that Defendant breached its statutory or contractual duties of ordinary care with its notice to Plaintiff of the dishonored check.

Plaintiff further alleges that Defendant breached its duty of ordinary care in crediting its account with the Paulson check from November 29, 2022, through December 1, 2022. (*Id.* at p. 5). In addition to Plaintiff's failure to make factual allegations supporting that Defendant's actions violated reasonable and prevailing commercial standards in the banking industry, (*see id.*), this allegation has no contractual basis. As Defendant notes, the Deposit Agreement states that "[a]ll items are credited subject to final payment and our receipt of cash or its equivalent." (Doc. 8-2 at p. 14).

Nor are Plaintiff's claims supported by state or federal law. In terms of federal law, Plaintiff has failed to provide any persuasive support of its position.[3] Meanwhile, Defendant has cited to the Expedited Funds Availability Act as support for its position on the lawfulness of making funds provisionally available. (Doc. 13 at p. 5). The Expedited Funds Availability Act sets forth various deadlines for banks to make funds available upon deposit, while also noting that its terms affect neither a bank's right to revoke any provisional settlement with respect to a deposited check, nor a bank's right to claim a refund of such provisional credit. 12 U.S.C. §§ 4002, 4006. This

---

[3] Plaintiff cites to the case of *O'Brien & Wolf, LLP v. Associated Banc-Corp*, No. 11-CV-1253 SER, 2013 WL 1104641 (D. Minn. Mar. 18, 2013), as support for its position that Defendant breached its duty of ordinary care in making the Paulson check provisionally available, and as support for its related negligent misrepresentation claim. (Doc. 11 at p. 8). This case is largely irrelevant to the present dispute, because, in addition to being based on a substantially different fact pattern, *O'Brien & Wolf, LLP* applied Minnesota law, not Louisiana law. 2013 WL 1104641 at *6.

language indicates that the provisions of the Deposit Agreement, which expressly allow Defendant to take the actions alleged, (*see* Doc. 8-2 at p. 14), are not contrary to federal law and are therefore enforceable.

### B.    Negligent Misrepresentation

Under Louisiana law, negligent misrepresentation claims are limited to situations where contractual or fiduciary relationships exist. *Daye v. Gen. Motors Corp.*, 97-1653 (La. 9/9/98), 720 So. 2d 654, 659. Plaintiff and Defendant had a contractual relationship, but the terms of the Deposit Agreement still preclude Plaintiff's negligent misrepresentation claim. That is because La. Stat. Ann. § 6:1124 "forecloses 'the possibility of a lawsuit against a bank for negligent misrepresentation unless there was a contract or a written agreement that the financial institution had a fiduciary obligation to the person claiming negligent misrepresentation.' " *California First Nat'l Bank v. Boh Bros. Constr. Co., LLC*, No. CV 16-2699, 2018 WL 321709, at *3 (E.D. La. Jan. 8, 2018) (quoting *Priola Const. Corp. v. Profast Dev. Grp., Inc.*, 2009-342 (La. App. 3 Cir. 10/7/09), 21 So. 3d 456, 462, *writ denied*, 2009-2403 (La. 1/22/10), 25 So. 3d 142). Here, the Deposit Agreement explicitly disavows any fiduciary obligations on the part of Defendant. (Doc. 8-2 at p. 7). Plaintiff's negligent misrepresentation claims therefore fail as a matter of law.

### C.    Miscellaneous Claims

Plaintiff's remaining claims are similarly subject to dismissal, as they are either conclusory or fail to state a claim. *See Conner v. Orleans Par. Sheriff's Off.*, No. CV 19-561, 2019 WL 4393137, at *5 (E.D. La. Sept. 13, 2019) (claims based on "wholly conclusory" allegations will be dismissed upon a Rule 12(b)(6) motion). Plaintiff

alleges that Defendant did not receive confirmation from Deutsche Bank that the wired funds had been rerouted to Nigeria, and were therefore impossible to recover, until fifteen days after Plaintiff alerted Defendant to fraud. (Doc. 1-1 at p. 4). During these fifteen days, Plaintiff asserts that Defendant "failed to exercise its due diligence to identify where exactly the wired funds were being held, failed to properly instruct Deutsche Bank Trust Company to return or pull back the funds and further failed to exercise ordinary care in any attempt to retrieve the funds." (*Id.*). Plaintiff reiterates these claims later in its Complaint. (*Id.* at p. 6). These are conclusory, legal allegations that do not withstand a well-pled motion to dismiss. *See Turner*, 848 F.3d at 685.

Plaintiff also alleges that Defendant "violated its customary policies and/or procedures" by provisionally debiting the check sums and by wiring these sums upon direction from Plaintiff. (*Id.* at p. 5). Plaintiff further contests that Defendant did not, in accordance with its own policies and procedures, "adequately" monitor foreign wire transfers, "investigate fraudulent activity and or dishonored deposits," or retrieve fraudulent transfers. (*Id.* at p. 5). These allegations are again conclusory, and therefore do not withstand Defendant's motion to dismiss. *See Turner*, 848 F.3d at 685. Moreover, Plaintiff has failed to provide any case law supporting its argument that failure to abide by internal policies constitutes a breach of the duty of ordinary care in these circumstances or comprises a standalone claim. (*See* Docs. 1-1, 11).

Finally, the remaining unaddressed allegations found at the end of Plaintiff's Complaint are likewise conclusory and fail to state a claim. (*See* Doc. 1-1 at p. 6 (Defendant is liable for "failing to exercise prudent and ordinary care" when

supervising Plaintiff's account, "negligently and improperly allowing funds to be transferred without proper authentication," and in "breaching its duty to Petitioner. . . to safe-keep Petitioner's funds")). Such claims are therefore subject to dismissal.

## IV.    CONCLUSION

Accordingly, and for the reasons provided above,

**IT IS ORDERED** that Defendant's **12(b)(6) Motion To Dismiss (Doc. 8)** be and is hereby **GRANTED**. Plaintiff's claims be and are hereby **DISMISSED WITH PREJUDICE.**

Judgment shall be entered separately.

Baton Rouge, Louisiana, this 24th day of September, 2024

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**